```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                          CENTRAL DIVISION
                             LEXINGTON
```

LARRY NEAL WILLIAMS,            )
                                )
    Plaintiff,                  )  Civil Action No. 5:14-295-JMH
                                )
V.                              )
                                )     **MEMORANDUM OPINION**
                                )         **AND ORDER**
FMC LEXINGTON WARDEN, et al.,   )
                                )
    Defendants.                 )

                  \*\*\*\*    \*\*\*\*    \*\*\*\*    \*\*\*\*

Larry Neal Williams is a federal inmate in the custody of the Bureau of Prisons ("BOP"). Williams is currently confined in the Federal Medical Center located in Butner, North Carolina ("FMC-Butner"); he was formerly housed in the Federal Medical Center located in Lexington, Kentucky ("FMC-Lexington"). While confined at FMC-Lexington, Williams, proceeding *pro se*, filed a Complaint pursuant to 28 U.S.C. § 1331, and the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), claiming that he had received inadequate medical care at FMC-Lexington and that the defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment to the United States Constitution. [R. 1] The named defendants are all FMC-Lexington prison personnel: (1) the Warden, (2) Dr. Rios, and

(3) unnamed staff. Williams sues the defendants in their individual and official capacities, and he seeks damages of $4.1 Million. *Id.*

Because Williams is proceeding *in forma pauperis* and is asserting claims against government officials, the Court must conduct a preliminary review of his complaint. 28 U.S.C. §§ 1915(e)(2), 1915A. A district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997). The Court evaluates Williams' complaint under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage, the Court accepts the plaintiff's factual allegations as true, and his legal claims are liberally construed in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The Court has given his complaint a liberal, and hence broad, construction, and will evaluate any cause of action which can reasonably be inferred from the allegations made.

For the reasons stated below, Williams' complaint will be dismissed because he failed to exhaust his administrative remedies prior to filing suit.

## BACKGROUND[1]

In his complaint, Williams states that in February 2013, while he was confined at Alexandria Federal Holdover, he became ill, experiencing pain in his lower abdomen, but was advised that no medical treatment was available there. [R. 1, Page ID# 2] Sometime thereafter, Williams was transferred to the Federal Correctional Complex-Hazelton ("FCC-Hazelton") located in Bruceton Mills, West Virginia. *Id.* While at FCC-Hazelton, Williams voiced complaints of lower abdominal pain, was examined and underwent tests. Based on a PET scan, cancer was suspected. Williams underwent exploratory surgery; a mass was discovered and removed from his lower abdominal area. A biopsy of that mass confirmed that it was cancerous. *Id.* Williams states that even though Dr. Mimms at FCC-Hazelton recommended that he undergo chemotherapy treatment post-surgery, "the facility was denied permission to treat me." *Id.*

Subsequently, in August of 2013, Williams was transferred to FMC-Lexington, according to Williams, so that he could be

---

[1] The following information is derived solely from Williams' version of the events giving rise to this action.

3

treated properly for his medical condition. *Id.* Williams states that within three weeks after he arrived at FMC-Lexington, another PET scan was performed, and he was advised that there was no indication of cancer in his lower abdominal area. *Id.* Williams states that he was examined by a consultative physician at the University of Kentucky Medical Center, who advised him that no treatment was necessary at that time because there was no sign of cancer but that Williams would be treated when the cancer returned. [R. 1, Page ID# 3]

Williams states that approximately ten months after the decision was made not to administer chemotherapy treatments, presumably by the consultative physician at the University of Kentucky, because Williams had no need for chemotherapy treatment due to no signs of cancer, another PET scan was performed of his lower abdominal area, indicating that the cancer had returned. *Id.* With that development, Williams advises that a recommendation was made to transfer him to FMC-Butner for treatment of his cancerous condition.[2] Williams states that he had repeatedly made this same request to prison officials at FMC-Lexington, which the Warden had denied.

---

[2]Williams does not state who made the recommendation to transfer him to FMC-Butner. It may have been the recommendation of the consultative/examining physician at the University of Kentucky or it may have been made by prison staff at FMC-Lexington.

4

Williams's claims that the medical staff at FMC-Lexington were "not qualified to make medical determinations regarding my type of illness made decisions to his detriment, resulting in his enduring unnecessary pain and suffering." He characterizes their conduct as "the unnecessary wanton infliction of pain and inadequate medical care." *Id.*

## DISCUSSION

**A.** <u>Official Capacity Claims</u>

A *Bivens* claim for damages may only be asserted against federal employees in their *individual* capacities; it may not be asserted against federal employees/officers in their official capacities. *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003); *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991).

When damages are sought against federal employees in their official capacities, the damages in essence are sought against the United States, and such claims cannot be maintained. *Clay v. United States*, No. 05-CV-599-KKC, 2006 WL 2711750 (E.D. Ky. Sept. 21, 2006). Thus, Williams' official capacity claims against these defendants will therefore be dismissed with prejudice for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1).

5

**B.     Failure to exhaust**

Williams might have a colorable *Bivens* claim against the defendants in their individual capacities; however, he is unable to pursue that claim because his complaint establishes that he did not exhaust his administrative remedies prior to filing suit. The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. §1997e(a), requires a prisoner to first exhaust whatever administrative remedies are available to him before suit is filed.

Based on this provision, regardless of the relief offered through the administrative procedures, prisoners are required to exhaust all administrative remedies prior to filing a lawsuit regarding prison life. *Booth v. Churner*, 532 U.S. 731, 741 (2001). This requirement applies to "all inmate suits about prison life, whether they involve general circumstance or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 525 (2002). The Supreme Court has further held that the PLRA requires proper exhaustion of the administrative remedy process, as "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules...." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The Supreme Court stressed that the benefits of

6

exhaustion "can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Id*. at 95. The BOP's four-tiered administrative remedy scheme, available to inmates who have a complaint about their confinement, is set out in Administrative Remedy Program Statement Number 1330.16 and 28 C.F.R. §§ 542.10-542.[3]

---

[3] The multi-step administrative remedies available to inmates confined in BOP institutions are set out in 28 C.F. R. §542.10-.19. Section 542.13(a) demands that an inmate first informally present his complaint to the staff [BP-8 form], thereby providing staff with an opportunity to correct the problem, before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint, then he may file a formal written request to the Warden [BP-9]. *See* §542.14(a). If the inmate is not satisfied with the Warden's response, he may appeal to the Regional Director [BP-10], and, if not satisfied with the Regional Director's response, the inmate may appeal that decision to the Office of General Counsel [BP-11]. *See* §542.15.

The administrative procedure includes established response times. §542.18. As soon as an appeal is accepted and filed, the Warden has 20 days to respond; the Regional Director, 30 days; and General Counsel, 40 days. Only one extension of time of 20-30 days, in writing, is permitted the agency. If the inmate does not receive a response within the allotted time, including extension, he may consider the absence of response as a denial at that level. *Id.*

The exhibits attached to Williams' Complaint reflect that on October 14, 2013, he submitted Administrative Remedy No. 754665-F1 to the Warden at FMC-Lexington regarding his medical care and treatment at FMC-Lexington. [R. 1-1, page ID# 9] Upon the Warden's denial thereof, on November 8, 2013, Williams appealed that denial to the BOP's Mid-Atlantic Regional Office ("MARO"). [R. 1-1, Page ID##11-12] On December 5, 2013, the Regional Director at MARO denied his appeal, advising Williams that if he elected to appeal to the BOP's Central Office, his appeal must be filed within 30 days from the date of the MARO response. [R. 1-1, Page ID# 13]

However, there is no indication that Williams filed an appeal to the BOP's Central Office. He attached neither any such appeal nor any response of the BOP's Central Office thereto. Further, in his Complaint at "Section IV. Exhaustion of Administrative Remedies," Williams indicated that he had only filed an Administrative Remedy request with the Warden and then filed an appeal to the Regional Director. See Complaint, Section IV.A.2 [R.1, Page ID# 4] That same portion of the Complaint requesting information as to an appeal to the BOP's Central Office is blank, *id.,* from which the Court must conclude that Williams failed to exhaust his administrative remedies.

8

Clearly, Williams began the Administrative Remedy process, but he failed to fully and properly exhaust his grievance pursuant to the administrative exhaustion procedures, "in accordance with all of the provisions thereof." *Jackson v. Walker*, No. 6:07-230-DCR, 2008 WL 559693 at *9, (E.D. Ky. Feb. 27, 2008). "In *Ngo*, the Supreme Court made it clear that 42 U.S.C. 1997e(a) requires available administrative procedures to be completed properly, not in a self-designated hodgepodge of procedures taken from various parts of the regulations." [Id.] "'Proper exhaustion' means that the plaintiff complied with the administrative 'agency's deadline and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.'" *Morton v. Daviess County Detention Center*, 4:08-CV-P30-M, 2009 WL 960495 at *2 (W.D.Ky. April 7, 2009) (citing *Woodford*, 548 U.S. 81).

Williams has failed to comply with the requirements of the PLRA in that he failed to address the allegations he raised in the *Bivens* complaint through all of the proper administrative remedy procedures. *Woodford v. Ngo*, *supra*, confirmed that these requirements are mandatory. *See, e.g., Macias v. Zenk*, 495 F.3d 37, 44 (2nd Cir. 2007) (holding that notice of a claim alone is

9

not sufficient after *Woodford*, which permits suit only after "proper exhaustion" of the administrative system); *Bailey-El v. Federal Bureau of Prisons*, 246 F. App'x 105, 107-08 (3rd Cir. 2007) (concluding that Plaintiff had no excuse for failing to follow procedures for appeals). A prisoner cannot fail to file an administrative grievance or abandon his efforts to complete the administrative process altogether. *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999).

Williams' failure to properly exhaust his underlying *Bivens* grievances through the available administrative remedies denied the agency the opportunity to address the issue at hand at all administrative levels; denied the Court with a proper administrative record; and failed to set forth a proper finding of facts. The allegations raised in the underlying *Bivens* claim, which contain assertions of civil rights violations, should have been grieved separately through the proper administrative remedy procedures. *See Macias v. Zenk*, 495 F.3d at 44.

Consequently, Williams' complaint must be dismissed because he failed to exhaust his administrative remedies.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) Plaintiff's *Bivens* claims against the defendants in their official capacities for violations of the Eighth Amendment are **DISMISSED WITH PREJUDICE** for failure to state a claim for which relief can be granted.

(2) Plaintiff's Complaint [R. 1] is **DISMISSED** for his failure to exhaust his administrative remedies.

(3) The Court will enter an appropriate judgment.

(4) This matter is **STRICKEN** from the active docket.

This the 27th day of January, 2015.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge